UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DUNKIN' DONUTS FRANCHISED
RESTAURANTS LLC, et al.,

          Plaintiffs,

vs.                    Case No.  3:07-cv-660-J-33TEM

D&D DONUTS, INC., et al.,

          Defendants.
_____/

**ORDER**

    This matter comes before the Court on Plaintiffs' Motion for a Preliminary Injunction and Memorandum of Support Thereof (Doc. # 34), filed on February 23, 2008.  Defendants filed their Memorandum in Opposition to Motion for Preliminary Injunction (Doc. # 41) on April 14, 2008.  On June 24, 2008, the Court held a hearing on the Motion for Preliminary Injunction.  Upon due and careful consideration of Plaintiffs' Motion, Defendants' Response, the parties' arguments at the hearing, and the record as a whole, it is hereby ordered that Defendants' Motion for Preliminary Injunction is granted.

**I.**  **Background**

    Plaintiffs Dunkin' Donuts Restaurants LLC ("Dunkin") and DD IP Holder LLC ("DD IP") are two Delaware corporations with principal places of business in Massachusetts.  (Doc. # 33 at 2.)  Dunkin is the franchisor for Dunkin' Donuts shops throughout the United

States, and DD IP is the owner of the trademark, trade dress, the trade name "Dunkin Donuts," and related marks.  (Id.)

Defendant D&D Donuts, Inc. is franchisee of a Dunkin' Donuts store located on Atlantic Boulevard ("Atlantic Boulevard Shop"); DDJ Donuts, Inc. is franchisee of two other Dunkin' Donuts locations ("Beach Boulevard Shop" and "Duval Road Shop"); and David Fenner is the owner and operator of the three locations and officer and shareholder of the two corporate defendants.  (Id. at 2-3.) David Fenner executed personal guarantees in which he promised to personally perform and be bound by the franchise agreements for all three locations.  (Id. at 3.)  Both of the corporate defendants are Florida corporations with their principal place of business in Jacksonville.  (Id.)

In March and August of 2005, Defendants entered separate franchise agreements with Dunkin for the Atlantic Boulevard, Beach Boulevard, and Duval Road shops.  (Id. at 2-3.)  As franchisees, Defendants were provided a set of manuals and guidelines detailing the procedures, methodology, and standards applicable to operation of a Dunkin' Donuts franchise.  (Id. at 6.)  Pursuant to the executed franchise agreements, Defendants pledged to "at all times operate the Unit in accordance with FRANCHISOR'S Standards (as defined in Definitions paragraph 'I'), in order to . . . protect and enhance the reputation and goodwill of FRANCHISOR, to promote

and protect the value of the proprietary Marks and other reasons . . . ." (Doc. # 34-3 at 5, § 5.0.)

Section I of the franchise agreement provides:

The "Standards" are requirements, specifications, criteria, guidelines, processes, techniques and standards which are from time to time established by the FRANCHISOR with respect to selection and development of the Premises, operation of the Unit and other aspects of each System. Examples of "standards" are, without limitation, requirements and criteria for developing the Unit; specifications for the facility, equipment and products; business processes and techniques for operation of the Unit; and guidelines and standards for quality, cleanliness, appearance and service.

(Id. at 3.) Each franchise agreement also contains a "cross-default" provision, which causes a franchisee to be in default under all franchise agreements if any one franchise agreement is terminated by reason of franchisee's default. (Id. at 13, §§ 9.0, 9.0.4.)

On April 18, 2007, Dunkin sent Defendants a Notice of Expiration of Franchise Agreement and Non-renewal, indicating that it had chosen not to renew the franchise agreement for the Duval Road location that was set to expire by its terms on August 8, 2007. (Doc. # 34-9 at 7.) On May 14, 2007, Dunkin sent a second letter withdrawing the notice of expiration and non-renewal and granting a one-year extension provided Fenner agreed to "sell all of his Dunkin' Brands franchises to approved purchasers within that one (1) year period." (Id. at 9.)

After the one-year extension was granted, sometime during the summer of 2007, Fenner entered into lease agreements for two other properties in the Jacksonville area. (Doc. # 36 at 27.) Fenner alleges that the properties were leased pursuant to an oral agreement with Dunkin to expand Fenner's franchises, which Dunkin later "arbitrarily withdrew." (Id.) After approval was withdrawn, Fenner alleges that he then assigned the leases to his brother, Brian Fenner, who opened competing Coffee Junction stores at those locations. (Id. at 28.) Dunkin denies any such agreement and asserts that when it discovered that Fenner had entered leases for Coffee Junction stores, it sent Defendants a Notice of Default and Termination. (Doc. # 1 at 8.) The July 13, 2007, Notice states that Defendants are in default for violating the non-compete provisions of the franchise agreements "by, at a minimum, signing leases for the [Coffee Junction] locations." (Doc. # 36 at 28.) On July 19, 2007, Plaintiffs filed a four-count Complaint against Defendants, asserting claims for breach of contract, trademark infringement, trade dress infringement, and unfair competition. (Doc. # 1.)

Following several inspections of Defendants' three locations during September 2007, Plaintiffs amended the complaint on October 24, 2007 to add a second breach of contract claim based on alleged uncured violations of health, sanitation, and safety standards. (Doc. # 16.) Plaintiffs concurrently filed a Motion for

Preliminary Injunction (Doc. # 17), which was resolved by a November 2, 2007 Order of this court directing Defendants to cure all referenced violations (see Doc. # 20).

Citing continuing defaults of the franchise agreement, Dunkin sent Defendants a letter dated December 12, 2007, that reinstated the April 18th Notice of Expiration and Non-renewal of the Duval Road shop franchise agreement and directed immediate closure and de-identification of that location. (Doc. # 34-9 at 11.) When Defendants failed to close the Duval Road shop as directed, Plaintiffs filed a Second Amended Complaint (Doc. # 14) on January 14, 2008, which cited Defendants' failure to close as an additional ground for the breach of contract claim. Plaintiffs' amended complaint also dropped the previous allegations relating to violation of the non-compete provisions.

During this same time period, on January 2, 2008, Dunkin sent Defendants a Notice of Default/Notice to Cure for the Atlantic Boulevard and Beach Boulevard shops, listing eight separate defaults of the franchise agreements and giving Defendants thirty days to cure.[1] (Doc. # 34-9 at 37-41.) Following a re-inspection of all stores on February 4, 2008, Dunkin sent Defendants a Notice of Default and Termination on February 7, 2008, listing ten ongoing

---

[1]The letter stated that the Duval Road shop was not included in the Notice because it was currently "the subject of a separate legal action to close and de-identify the premises because the franchise agreement had expired." (Doc. # 34-9 at 37.)

defaults of the franchise agreements, terminating all three franchise agreements, and demanding that Defendants immediately cease using Dunkin's methods and proprietary marks.   (Id. at 43-48.)

On February 15, 2008, Plaintiffs filed a Third Amended Complaint.  (Doc. # 33.)  The current complaint maintains the same five counts, but now bases the Count II breach of contract claim on allegations of nine separate defaults of the franchise agreements, including failure to timely pay franchise fees; failure to enroll in mandatory Dunkin' Donuts programs and use designated software; unauthorized wholesale sales to third-party vendors; uncured violations of health, safety, and sanitation standards; and failure to produce required business records.  (Id. at 12-16.)   In their Answer to Third Amended Complaint and Affirmative Defenses (Doc. # 36) filed on March 10, 2008, Defendants assert counterclaims against Dunkin for breach of implied covenant of good faith and fair dealing and violations of the Florida Deceptive and Unfair Trade Practices Act.

Plaintiffs filed the subject Motion for Preliminary Injunction on February 23, 2008, claiming that Defendants have committed numerous breaches of the franchise agreements that place them in default and justify termination.   (Doc. # 34 at 6-7.)   Thus, Plaintiffs seek an order enforcing the termination of the franchise agreements and enjoining Defendants from "continuing their

-6-

unauthorized use of Dunkin's trademarks and trade dress and engaging in unfair competition." (Id.)  In response, Defendants argue that Dunkin is unlikely to succeed on the merits because the affidavit of David Fenner presents conflicting testimony regarding several of the alleged breaches and Dunkin's conduct evidences an intent to specifically target Defendants and force them into default.  (Doc. # 41 at 4, 6.)  In addition, Defendants assert that the injury to them if the injunction is granted – effectively putting them out of business and causing termination of large numbers of employees – far outweighs any injury to Plaintiffs if Defendants are permitted to continue operating their franchises with " diminimis [sic] and immaterial" violations.  (Id. at 6.)

At the hearing on the Motion for Preliminary Injunction, Defendants raised an additional argument.  Defendants contend that Plaintiffs committed the first breach by improperly terminating the franchise agreements on July 13, 2007 based on Defendants' entering into leases on two properties that later became Coffee Junctions. Defendants claim that this "prior breach" by Plaintiffs relieves Defendants of their duty to perform under the franchise agreements.[2]  Because this point was not raised by Defendants in their Opposition to the Motion for Preliminary Injunction, the

---

[2]As Defendants admitted at the hearing, they failed to raise this argument in their Opposition to the Motion for Preliminary Injunction, but it was raised as the Sixth Affirmative Defense in their Answer to the Third Amended Complaint.  (Doc. # 36 at 25.)

Court declined to hear argument on this issue at the hearing, but permitted Plaintiffs to submit legal authority addressing the "prior breach" argument.  Plaintiffs submitted these documents to the Court on June 25, 2008.  (Doc. # 56.)

## II.  <u>Legal Standard</u>

The Eleventh Circuit has articulated the four prerequisites for a preliminary injunction.  The movant must clearly show: (1) substantial likelihood of success on the merits; (2) substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiff outweighs the harm an injunction may cause defendant; and (4) that granting the injunction would not disserve the public interest.  <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1341-42 (11th Cir. 1994).

It is recognized that "a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establish[es] the 'burden of persuasion' as to each of the . . . prerequisites." <u>Seigel v. LePore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000) (citing <u>McDonald's Corp. v. Robertson</u>, 147 F.3d 1301, 1306 (11th Cir. 1998)).  Morever, the Eleventh Circuit also notes that the grant of a preliminary injunction is "the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." <u>Id.</u> at 1180 (citing <u>United States v. Lambert</u>, 695 F.2d 536, 539 (11th Cir. 1983) (quoting <u>Texas v. Seatrain Int'l, S.A.</u>, 518 F.2d 175, 179 (5th Cir. 1975))).

III. **Analysis**

    A.    **Likelihood of Success**

        1.    **Breaches of Franchise Agreements**

Plaintiffs' first breach of contract claim asserts that Defendants continue to operate the Duval Road shop after expiration of the franchise agreement.  The franchise agreement was originally set to expire by its terms on August 8, 2007, but Plaintiffs granted a one year extension as of May 14, 2007, provided that Defendants sell all franchises to approved purchasers within that time.  On December 12, 2007, Plaintiffs reinstated the August 8, 2007, expiration due to Defendants' continued defaults.  Defendants admit they received Plaintiffs' letter reinstating expiration and that they continue to operate the Duval Road shop.  Defendants' sole argument in defense seems to be that Plaintiffs' July 13, 2007 termination based on alleged violation of non-compete provisions of the franchise agreement was wrongful and that those allegations have since been withdrawn.  (Doc. # 42-2 at 10-11.)  This argument lacks merit.

First, Plaintiffs' December 12, 2007, letter reinstating the termination of the Duval Road franchise agreements does not identify specific defaults upon which the termination is based.  In addition to Defendants' alleged violation of the non-compete clause, Plaintiffs had on September 24, 2007, served Defendants with a twenty-four hour Notice to Cure health, sanitation, and

safety violations, which remained uncured at re-inspections conducted on September 27, 2007, November 8, 2007, and November 28, 2007. These violations serve as independent bases to terminate the Duval Road agreement. Second, Defendants executed a franchise agreement whereby they agreed that the existence of any legal claims against Dunkin would not constitute a defense to Dunkin's enforcement of the agreement. (Doc. # 34-4 at 1, § 9.5.) Thus, Plaintiffs alleged wrongful termination does not excuse Defendants' continued operation past expiration of the Duval Road franchise agreement. Accordingly, the Court finds that Plaintiffs have established a substantial likelihood of success as to Count I of their Third Amended Complaint.

Plaintiffs' second breach of contract claim alleges that Defendants have committed numerous material breaches of all three franchise agreements, that Defendants have failed to cure those defaults within the period required under their contracts, and that Plaintiffs therefore rightfully terminated the franchise agreements. Defendants submit the affidavit of David Fenner to rebut or defend several of the alleged violations and to support their claim that the course of events in this case reveal an improper motive on the part of Plaintiffs to force Defendants into default. In addition, Defendants argue that any violations committed by Defendants (1) are "diminimis [sic] and immaterial," and (2) are excused due to Plaintiffs' prior breach. (Doc. # 36 at

25; Doc. # 41 at 4-6.)  Defendants are unlikely to succeed at trial
on any of these defenses.

Plaintiffs claim that Defendants have defaulted under
provisions of the franchise agreement that require franchisees to:
(1) report gross sales and pay franchise fees on a weekly basis;
(2) maintain Dunkin's standards for health, sanitation, and safety;
(3) comply with Dunkin management standards relating to oversight
of stores, wholesale sales to third parties, records requests, and
remodeling requirements; and (4) use specified software and
equipment.  In addition, Plaintiffs assert that Defendants continue
to operate the Duval Road shop after being notified that the
franchise agreement has expired.

Pursuant to Sections 9.1.4 and 9.4 of the franchise agreement,
the agreement immediately terminates if the franchisee "has
received three (3) or more notices to cure for the same or a
substantially similar default (whether or not FRANCHISEE has cured
the same) within the immediately preceding twelve (12) month
period."  (Doc. # 34-3 at 13.)  Section 4.3 of the franchise
agreement requires the franchisee to pay fees on gross sales to
Dunkin on a weekly basis.  (Id. at 5.)  According to Plaintiffs,
Defendants were sent notices to cure for failure to pay fees on
time on four separate occasions between August 2007 and February
2008, and therefore the agreements were rightfully terminated on
that basis alone.

Defendants maintain that they pay fees every two to four weeks, which is the "Dunkin' Donut franchisee standard," and that all fees have now been paid. (Doc. # 42-2 at 2-3.) Defendants do not dispute the requirements under the franchise agreement, and they admit that they have not paid fees on a weekly basis. The fact that the late payments have now been cured is no defense to the default, as the contract clearly states in Section 9.1.4. In addition, Defendants' convoluted argument that a different "franchisee standard" exists based on unsubstantiated references to a twenty-five percent sales-reporting figure is not persuasive.[3] Even if other franchisees are making late payments, which Defendants provide no evidence of, that fact would not excuse Defendants' breach. In this case, Plaintiffs clearly put Defendants on notice, on four separate occasions, that they expected Defendants to pay their fees on a weekly basis as required under the franchise agreement. Thus, Plaintiffs have provided substantial evidence that Defendants breached the franchise agreements by receiving more than three notices to cure late payment of fees within a twelve-month period.

Although that breach alone is likely sufficient to justify termination by Dunkin, the Defendants also breached their franchise

---

[3]The affidavit of David Fenner states that he knows the franchisee standard is payment every two to four weeks because he "frequently receive[s] letters from the marketing director at Dunkin' Donuts regarding the sales figures stating that only 25% of the franchise locations were reporting." (Doc. # 42-2 at 3.)

agreements by repeatedly violating Dunkin's health, sanitation, and safety standards.  Defendants are required under Sections I and 5.0 of their franchise agreements to at all times operate their franchises in accordance with Plaintiffs' "guidelines and standards for quality, cleanliness, appearance and service." (Doc. # 34-3 at 3, 5.)  Section 5.1.6 requires franchisees to maintain the interior of their stores and all equipment "in the highest degree of cleanliness, orderliness, sanitation and repair, as reasonably required" by Dunkin'.  (<u>Id.</u> at 6.)  Under Section 9.1.2, franchisees are given twenty-four hours to cure a violation of the health, sanitation, or safety standards after written notice is received.  (<u>Id.</u> at 13.)  If the default is not cured within that time frame, the franchise agreement may be terminated immediately. (<u>Id.</u>)

Plaintiffs have submitted inspection reports reflecting that all three of Defendants' stores were inspected on September 24, 2007, and that numerous violations of Dunkin's health, safety and sanitation standards were found.  (Doc. # 34-9 at 14-29.)  On the same day, Defendants were given a notice of default/notice to cure for each shop, requesting that the violations be cured within twenty-four hours.  (<u>Id.</u> at 31-35.)  A re-inspection of Defendants' stores on or about September 27, 2008, revealed many uncured violations as well as new violations.  (Doc. # 34-11 at 22-46.) Dunkin re-inspected all three locations again in November 2007, and

-13-

a third time in February 2008, and on each occasion there existed uncured violations from previous inspections and new violations were found.   Plaintiffs have submitted numerous photographs depicting the magnitude and seriousness of these health violations (Id.)

Defendants admit that the stores were inspected on each of those dates, that the majority of the stated violations were present, and that the violations remained uncured.   In defense of these violations, however, Defendants assert that the violations were "minuscule and far less in number than the average Dunkin' franchise nationwide" and that all violations have now been cured. (Doc. # 42-2 at 3.)   In addition, Defendants allege that Dunkin's operations manager Jon Jones engaged in conduct designed to fraudulently increase the number of violations at Defendants' locations.[4]   (Id. at 3-5.)

The photographs submitted by Plaintiffs, which depict, among other things, debris, dirt, and mold on floors and equipment; roaches and fruit flies in food production areas; and uncovered, undated food product, belie Defendants' contention that the cited violations are minor and technical in nature.   As the district court in Dunkin' Donuts Inc. v. Priya Enter. Inc. recognized,

---

[4]David Fenner's affidavit states that Jones was captured on videotape erasing required pencil marks on bottles to fraudulently create a violation.  (Doc. # 42-2 at 4.)  Fenner also alleges that two of Jones' claimed violations were in error, implying that the errors were calculated efforts to find violations.  (Id. at 4-5.)

"unsatisfactory sanitary practices - such as failing to clean food preparation equipment - in a business selling food to the public can [never] be considered *de minimus*."  89 F. Supp. 2d 319, 323 (E.D.N.Y. 2000).  The Eleventh Circuit has established that a franchisee's violation of the franchisor's standards for health, sanitation, and safety amount to a material breach of the franchise agreement sufficient to justify termination.  <u>McDonald's Corp. v. Robertson</u>, 147 F.3d 1301, 1309 (11th Cir. 1998).

The September 2007 inspections revealed between fourteen and sixteen violations at each of Defendants' locations, which Defendants claim are very low compared to the national average. Defendants allege that they obtained this information from Michael Justo, an employee of the company Dunkin uses for its food-safety inspections.  In rebuttal, Plaintiffs submit the affidavit of Michael Justo, who not only denies making such a statement, but further asserts that fourteen violations is a "serious failure" that "poses significant risk to customers, especially given the nature of some of the violations." (June 24, 2008 Hearing, Pl. Exh. 1.)  In any event, the franchise agreements do not require a certain number of health and safety violations to justify termination.

Defendants' argument that the violations have since been cured is equally unavailing.  Plaintiffs' right to terminate must be judged as of the date on which notice of termination was delivered.

Dunkin' Donuts Inc. v. N. Queens Bakery, Inc., 216 F. Supp. 2d 31, 41 n. 13 (E.D.N.Y. 2001).  Defendants' shops were inspected on February 4, 2008, just three days before notice of termination was served, and numerous, substantial violations were recorded at that time.  Given the previous inspections, re-inspections, and notices to cure, Plaintiffs have shown ample justification to terminate Defendants' franchise agreements as of February 7, 2008.

Lastly, Defendants assert that Plaintiffs' operations manager fraudulently created several violations that appeared on inspection reports.  Upon review of the videotape produced by Defendants, the Court was unable to detect any evidence that Jones engaged in the alleged conduct.[5]  Even assuming that Jones did inaccurately report two or three of the cited violations, an allegation which at this point remains totally unsubstantiated, the submitted photographs speak for themselves and indicate numerous, serious health hazards in violation of the standards set forth in the franchise agreements.

Pursuant to Sections 9.0 and 9.0.4 of Dunkin's franchise agreement, a franchisee is in default under all franchise agreements if any franchise agreement between Dunkin and the franchisee is terminated due to franchisee's default.  Due to this "cross-default" provision, and the fact that each of the two

---

[5]Defendants failed to provide any indication as to where on the ninety-minute tape the asserted conduct occurred, making it more difficult for the Court to verify the allegations.

defaults discussed above constitute material breaches justifying termination of all Defendants' franchise agreements, it is unnecessary to engage in lengthy analysis of the remaining grounds for termination alleged by Plaintiffs.

However, the Court notes that several of Plaintiffs' allegations relating to violations of Dunkin's management standards are equally well established. For example, Plaintiffs' January 2, 2008, Notice of Default/Notice to Cure referenced Defendants' failure to remodel and failure to install certain equipment and software at the Atlantic Boulevard and Beach Boulevard shops. Defendants were given thirty days to cure the deficiencies as provided in Section 9.1 of the franchise agreements. Defendants do not assert that they began remodeling efforts or installed the required equipment in an effort to cure; instead, they claim that they were given verbal approval by a Dunkin representative, months before the notice to cure was received, to postpone these required updates. (Doc. # 42-2 at 8-10.) Although Plaintiffs vehemently dispute any such verbal approval, a determination on that point is irrelevant given Plaintiffs' clear demand for compliance issued on January 2, 2008. Defendants failed to cure the cited defaults within the contractually allotted cure time and therefore were in breach of the franchise agreements on those grounds as well.

Turning to Defendants' last two defenses - Plaintiffs' improper motive and prior breach - the Court finds them equally

-17-

unavailing.   The Eleventh Circuit has held that a franchisor's motive for termination is irrelevant where there has been a material breach of the franchise agreement sufficient to justify termination of the franchise agreement.  _Robertson_, 147 F.3d at 1309.   In _Robertson_, a franchisee was appealing the district court's issuance of a preliminary injunction enjoining them from continuing to run a McDonald's franchise after their franchise agreement was terminated for numerous food safety violations.  _Id._ at 1302, 1305.   The franchisee claimed that the cited violations were merely an excuse to terminate the contract so that McDonald's could move the store to a more lucrative location.  _Id._ at 1308-09. In affirming the district court's decision, the Eleventh Circuit found that any "ulterior, improper motive" for termination did not matter if the termination was properly based on a material breach, because "'a franchisor's right to terminate a franchisee exists independently of any claims the franchisee might have against the franchisor.'" _Id._ at 1309 (quoting _S & R Corp. v. Jiffy Lube Int'l, Inc._, 968 F.2d 371, 375 (3rd Cir. 1992).

Likewise, Defendants' claim that Plaintiffs committed the first breach, even if true, does not serve as a valid defense to Defendants' failure to comply with the terms of the franchise agreement.  It is well established that one party to a contract may not stop performance due to an alleged breach by the other party "_and_ still continue to take advantage of the contract's benefits."

S & R Corp., 968 F.2d at 376; see also Burger King Corp. v. Hinton, 203 F. Supp. 2d 1357, 1365 (S.D. Fla. 2002) (holding that the fact that the franchisee had alleged wrongdoing on the part of the franchisor did not relieve the franchisee of its obligations under the franchise agreement). In addition, as stated above, Defendants agreed under their franchise agreements that the existence of a legal claim against Dunkin is not a defense to Dunkin's enforcement of the terms of the franchise agreement. (Doc. # 34-4 at 1, § 9.5.)

Based on the evidence and testimony presented, Plaintiffs have clearly shown a substantial likelihood of success on the merits on both of their breach of contract claims.

### 2. Infringement and Unfair Competition

The evidence establishing Plaintiffs' likelihood of success on their breach of contract claims likewise demonstrates a likelihood of success on their infringement and unfair competition claims.

To prevail on a trademark infringement claim under Section 32 of the Lanham Act, Plaintiffs must show that their trademark is valid and that Defendants have used the mark in a way that is likely to confuse consumers. Dieter v. B & H Indus. of S.W. Fla., Inc., 880 F.2d 322, 326 (11th Cir. 1989). To prove a violation of Section 43 of the Lanham Act for trade dress infringement, Plaintiffs must establish that "the trade dress of the two products is confusingly similar, that the features of the trade dress are

primarily non-functional, and that the trade dress has acquired secondary meaning." John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 980 (11th Cir. 1983) (internal citations omitted). Although unfair competition is a broader claim than infringement, it also "calls on the plaintiff to show confusing similarity between the services." Freedom Sav. & Loan Ass'n v. Way, 757 F.2d 1176, 1186 (11th Cir. 1985).

Dunkin' Donuts' trademarks have been properly registered in compliance with the Lanham Act (Doc. # 33 at 4), and thus their validity is "conclusively presumed." Dieter, 880 F.2d at 326. Plaintiffs have the exclusive license to use these marks and trade name and have used them continuously since 1960 to identify their shops and product. (Doc. # 33 at 4.) In addition, Plaintiffs' trade dress, which includes their distinctive lettering style and color scheme, the exterior appearance of their shops, and the interior decor, is non-functional in nature. After utilizing the same distinctive trade dress at thousands of locations for years, and expending millions of dollars advertising and promoting the same, it is indisputable that Dunkin's trade dress has acquired secondary meaning.

Although Defendants are in breach of their franchise agreements and have been directed by Plaintiffs to immediately cease using Dunkin's trademark and trade dress, Defendants continue to operate three Dunkin' Donut stores as if they are still licensed

franchisees.   In <u>Robertson</u>, the Eleventh Circuit held that such conduct creates "a certainty of confusion" among consumers that the terminated franchisee's products are actually the certified products of the franchisor.  <u>Robertson</u>, 147 F.3d at 1309. Thus, Plaintiffs have met their burden of establishing a substantial likelihood of success on their infringement and unfair competition claims.   See e.g. <u>Dunkin' Donuts Franchised Restaurants LLC v.</u> <u>Cardillo Capital, Inc.</u>, 551 F. Supp. 2d 1333, 1338 (M.D. Fla. 2008) (granting summary judgment in favor of Dunkin' Donuts on their trademark infringement and unfair competition claims after terminated franchisee continued to operate using Dunkin's marks); <u>N. Queens Bakery, Inc.</u>, 216 F. Supp. 2d at 43-44 (finding likelihood of success on infringement claims in same circumstances); <u>Dunkin' Donuts, Inc. v. Donuts, Inc.</u>, No. 99-CV-1141, 2000 WL 1808517 at * 7 (N.D. Ill. Dec. 6, 2007) (granting summary judgment on infringement and unfair competition claims in same circumstances).

**B.   Irreparable Injury**

Plaintiffs assert that Defendants' continued use of Dunkin trademarks, trade dress, and methods has caused and continues to cause irreparable harm.  Defendants argue that no harm has occurred because there has been no breach of the franchise agreements and there is no evidence that the alleged health violations have cast the Dunkin brand in a negative light.

-21-

The Eleventh Circuit has stated that "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." Robertson, 147 F.3d at 1310 (quoting E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, 756 F.2d 1525, 1530 (11th Cir. 1985)). "By its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated." Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992). Furthermore, the franchise agreements executed between Plaintiffs and Defendants provide that "any unauthorized use of [Dunkin's proprietary marks] during the term of or after expiration or the earlier termination of this Agreement shall constitute an incurable default causing irreparable harm." (Doc. # 34-3 at 11, § 7.1.)

Plaintiffs have established that the franchise agreements were properly terminated following Defendants' repeated material breaches of the agreements. It is also undisputed that Defendants continue to operate all three shops utilizing the Dunkin' Donuts trademarks and trade dress. Pursuant to the executed franchise agreements, Defendants agreed that unauthorized use of Plaintiffs' trademark constitutes irreparable harm. Thus, the Court finds that

Plaintiffs have established a substantial threat of irreparable injury if the preliminary injunction is not issued.

### C.    Balance of Potential Harms

The Court must next determine whether the threatened injury to Plaintiffs outweighs whatever damage an injunction might cause the Defendants. Davidoff & Cie, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1300 (11th Cir. 2001). The inquiry is whether the probable loss of consumer goodwill outweighs the Defendants' losses arising from their inability to sell product using the trademark until a decision on the merits. Id. at 1304.

Plaintiffs argue that their inability to control the quality of the goods and services provided by Defendants' unauthorized operations will cause great harm to the "considerable goodwill associated with their marks," which has been built through the expenditure of substantial resources over many years. (Doc. # 34 at 28-29.) They further assert that Defendants cannot complain of injury that is "completely self-inflicted." (Id.) Defendants' harm arises from their potential loss of income as well as the likely termination or lay-off of numerous employees.

Other courts faced with substantially similar circumstances have found that a franchisee that has breached the terms of its franchise agreement cannot then complain of harm from an injunction preventing further use of the franchisor's trademarks. See e.g. S & R Corp., 968 F.2d at 379 (upholding preliminary injunction and

finding that franchisee's "self-inflicted harm is far outweighed by the immeasurable damage done Jiffy Lube by the infringement of its trademark"); Burger King Corp. v. Majeed, 805 F. Supp. 994, 106 (S.D. Fla. 1992) (applying same reasoning in granting preliminary injunction).

Although the Court recognizes that Defendants will suffer financial losses if a preliminary injunction issues, that harm is a result of Defendant's own failure to comply with numerous requirements of their executed franchise agreements. Weighing Defendants' self-inflicted injury against Plaintiffs' immeasurable losses to its hard-earned goodwill, the Court finds that the balance of harms weighs decisively in favor of granting the requested injunctive relief.

### D.   Public Interest

A preliminary injunction in this case "is not adverse to the public interest, because the public interest is served by preventing consumer confusion in the marketplace." Davidoff & Cie, S.A., 263 F.3d at 1304. Defendants have not offered any argument on this point. Under the circumstances of this case, Plaintiffs have established that the granting of a preliminary injunction would not be adverse to the public interest.

For the reasons stated herein, Plaintiffs' request for a preliminary injunction, preventing the Defendants from further

unauthorized use of Dunkin' Donuts trademarks and trade dress, is granted.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiffs' Motion for a Preliminary Injunction (Doc. # 34) is **GRANTED**.

(2) Defendants D & D Donuts, Inc., DDJ Donuts, Inc., and David Fenner, individually and collectively, and all those acting in concert therewith are, pending further order of this Court or the trial of this matter, **HEREBY RESTRAINED AND ENJOINED FROM:**

    (a) Operating Dunkin' Donuts shops located at: (i) 10379 Atlantic Boulevard, Jacksonville, Florida; (ii) 11657 Beach Boulevard, Jacksonville, Florida; and (iii) 14670 Duval Road, #202B, Jacksonville, Florida.

    (b) Using, displaying, or otherwise infringing upon the trademarks, trade name, trade dress, and proprietary and confidential information and systems of Dunkin' Donuts; or using or displaying any other name, mark, or trade dress that is confusingly similar to the trademarks, trade name, and trade dress of Dunkin' Donuts.

(3) Defendants D & D Donuts, Inc., DDJ Donuts, Inc., and David Fenner **SHALL:**

    (a) Not directly or indirectly at any time or in any manner use any trademarks, service marks or trade dress used to

identify the products and/or services offered by Dunkin'
Donuts shops, including the marks Dunkin' Donuts ® or the
distinct building designs and interior and exterior color
schemes (collectively, the "Marks") or any colorable
imitation or other indicia of a Dunkin' Donuts shop;

(b)   Discontinue using for any purpose all signs, fixtures,
furniture, decor items, advertising materials, forms and
other materials and supplies which display any of the
Marks or any distinctive features, images, or designs
associated with a Dunkin' Donuts shop;

(c)   Immediately cease use of all Confidential Information, as
defined in the Franchise Agreements, and return to
Plaintiffs, within ten (10) days and at Defendants'
expense, all copies of all Operations Manuals and other
confidential materials which have been loaned to
Defendants by Plaintiffs.

(4)   The terms of this Order shall take effect on **July 28, 2008 at
5:00 p.m.**

(5)   Pursuant to Federal Rule of Civil Procedure 65(c), the
effectiveness of this preliminary injunction is conditioned
upon Plaintiffs' posting a good and sufficient bond in the
amount of **Fifteen Thousand ($15,000) Dollars** for the payment
of such costs and damages as may be incurred or suffered by

Defendants in the event they are found to have been wrongfully enjoined or restrained.

**DONE** and **ORDERED** in chambers in Jacksonville, Florida, this 22nd day of July, 2008.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

copies to:

All counsel of record